IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

| | |
|---|---|
| DEBRA MASSIE, ) | |
| ) | |
|     Plaintiff, ) | |
| v. ) | Civil Action No. 5:11-0218 |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
|     Defendant. ) | |

**PROPOSED FINDINGS AND RECOMMENDATION**

Pending before this Court is the United States' Motion for Summary Judgment (Document No. 28.), filed on April 9, 2012. The Court notified Plaintiff pursuant to Roseboro v. Garrison, 528 F.2d 304 (4th Cir. 1975), that Plaintiff had the right to file a response to the United States' Motion and submit Affidavit(s) or statements and/or other legal or factual material supporting her claims as they are challenged by the United States in moving for summary judgment. (Document No. 30.) Plaintiff failed to file a Response. Having examined the record and considered the applicable law, the undersigned has concluded that the United States' Motion for Summary Judgment should be granted.

**FACTUAL AND PROCEDURAL HISTORY**

On April 4, 2011, Plaintiff, by counsel, filed her Complaint in this matter claiming entitlement to monetary damages pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b) and 2671 et seq. (Document No. 1.) Plaintiff named the United States of America as the Defendant. (Id.) Plaintiff alleges that on March 3, 2006, she was seen at the Beckley-Raleigh County Board of Health for a pregnancy test. (Id., p. 2.) The pregnancy test was positive and Plaintiff was referred to Access Health for pregnancy care. (Id.) While receiving treatment at Access Health,

Plaintiff was under the care of Norman Siegal, MD, David Rainey, MD, and Dr. Wolfe. (Id.) Initial blood work was ordered on March 9, 2006, which included a series of prenatal blood tests as well as a routine screening for HIV. (Id.) On March 15, 2006, the lab reported that the HIV test was "repeatedly reactive." (Id.) A confirmatory test known as a "Western Blot" was done on the same blood sample, which was reported as positive. (Id.) Plaintiff was informed by Access Health on March 23, 2006, that she was HIV positive and was referred to an infectious disease doctor. (Id.) On March 27, 2006, the Beckley-Raleigh County Board of Health gave Plaintiff an order form for further lab work that was drawn on March 28, 2006. (Id.) The lab results were reported on April 3, 2006, which revealed that the HIV/EIA test was "non-reactive" or negative. (Id., pp. 2 - 3.) Plaintiff contends that the results of the negative HIV test were forwarded to Access Health in April 2006, but Access Health did nothing to resolve the discrepancy in the HIV diagnoses. (Id., p. 3.) Plaintiff states that even though she was treated by physicians at Access Health during her pregnancy, she was never informed by Access Health of her negative HIV test results. (Id.)

In October 2006, Plaintiff was admitted to Raleigh General Hospital for the delivery of her son and all records from Access Health contained a diagnosis that Plaintiff was HIV positive. (Id.) Plaintiff was informed of the potential ramifications of giving birth while being HIV positive and both she and her son were given antiviral agents. (Id.) Plaintiff was informed by physicians at Access Health that a sterilization and C-section would be necessary because of her HIV positive status. (Id.) Plaintiff claims that she elected to have a C-section and to become sterilized because of her HIV positive status. (Id.)

Plaintiff states that an additional HIV test was performed at Raleigh General Hospital, which

2

revealed negative results. (Id.) Plaintiff, however, asserts that this negative result was never reported to her and Access Health did nothing to resolve the discrepancy. (Id.) Plaintiff alleges that due to the negligence of Access Health, she did not learn she was HIV negative until 2008. (Id.) Plaintiff contends that Access Health acted negligently by failing to inform her of the negative HIV test and by failing to perform further testing to confirm the negative HIV test. (Id., p. 4.) Plaintiff claims that in 2008, she had a series of additional tests conducted that confirm she is HIV negative. (Id.) Plaintiff alleges that "[a]s a result of the negligence of Access health in failing to inform Ms. Massie of the negative HIV tests, and in failing to perform further testing to confirm the negative HIV tests, Ms. Massie was forced to take, unnecessarily, antiviral medications during her pregnancy, her baby was required to receive, unnecessarily, a regime of antiviral medications, Ms. Massie was forced to undergo an unnecessary Cesarean Section in order to have her baby, and she was unnecessarily sterilized and as a result is unable to have additional children." (Id.) Thus, Plaintiff alleges that she has suffered severe emotional distress and incurred substantial medical expenses as a result of Access Health's negligence.[1] (Id., pp. 4 - 5.) As relief, Plaintiff requests "compensatory damages, prejudgment and post judgment interest, attorneys' fees, costs, expenses, and all other expenses allowed by law." (Id., p. 6.)

On June 1, 2011, the United States filed its Answer, "Motion to Dismiss Plaintiff's Demand for a Jury Trial," and "Motion to Dismiss Plaintiff's Claims for Pre-Judgment Interest and Attorney's Fees." (Document Nos. 4, 5, and 7.) On June 22, 2011, Plaintiff, by counsel, filed her

---

[1] In her Complaint, Plaintiff alleges that "[p]ursuant to the provisions of the West Virginia Code § 55-7B-6, a Notice of Claim and Screening Certificate was provided to the Defendant, including a report from Dr. Carmen Zorilla." (Document No. 1, p. 5.)

3

Responses to the United States' Motions. (Document Nos. 10 and 11.) By Order entered on September 6, 2011, United States District Judge Irene C. Berger granted the United States' Motion to Dismiss Plaintiff's Demand for a Jury Trial and Motion to Dismiss Plaintiff's Claims for Pre-Judgment Interest and Attorney's Fees. (Document No. 16.) On September 8, 2011, Plaintiff's counsel, Arden J. Curry, II, Susan Curry Brasselle, Pauley Curry, and Anthony J. Sparacino, filed a Motion to Withdraw as Counsel. (Document No. 17.) By Order entered on September 23, 2011, District Judge Berger granted the Motion and Plaintiff began acting *pro se*.[2] (Document No. 22.)

On April 9, 2012, the United States filed a "Motion for Summary Judgment and Other Discovery Relief" and Memorandum in Support. (Document Nos. 28 and 29.) Specifically, the United States requests that this Court "enter an order suspending its obligation to make Fed. R. Civ. P. 26(a)(2)(A) and (B) disclosures" and grant it summary judgment. (Document No. 28, p. 2.) In support, the United States states as follows:

1. On August 11, 2011, the Court entered a Scheduling Order (ECF No. 13) requiring the plaintiff to make disclosures under Fed. R. Civ. P. 26(a)(2)(A) and (B) for her expert witnesses. To date, the plaintiff has not served those required disclosures.[3]

2. Under applicable federal law and West Virginia law, the plaintiff must prove her case under the West Virginia Medical Professional Liability Act ("MPLA") through expert witness testimony since this case involves allegations of a medical misdiagnosis and failure to order certain medical test which would involve medical matters beyond common knowledge of a factfinder. W.Va. Code §§ 55-7B-3, 55-7B-7.

---

[2] Because Plaintiff is acting *pro se*, the documents which she has filed are held to a less stringent standard than if they were prepared by a lawyer and therefore construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

[3] Based upon a review of the Scheduling Order, Plaintiff was required to make any Fed. R. Civ. P. 26(a)(2)(A) and (B) disclosures by March 15, 2012. (Document No. 13.)

3. Since the plaintiff has failed to produce expert witness testimony to support her allegations, the United States is entitled to summary judgment as a matter of law.

4. The United States also respectfully requests that it not be required to make any Fed. R. Civ. P. 26(a)(2)(A) and (B) disclosures on April 16, 2012, as required by the Scheduling Order since the plaintiff has failed to make such disclosures, and the United States would be prejudiced if it would be required to make such disclosures first since it does not have the burden of proof in this case on the issue of liability and proximate cause. W.Va. Code § 55-7B-3.

(Id., pp. 1 - 2.) By Order entered on April 10, 2012, the undersigned granted the United States' Motion to the extent that it requests the Court suspend its obligation to make Fed. R. Civ. P. 26(a)(2)(A) and (B) disclosures. (Document No. 31.) Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was also issued to Plaintiff on April 10, 2012, advising her of the right to file a response to the United States' Motion for Summary Judgment." (Document No. 30.) Plaintiff, however, has failed to file a Response to the United States' Motion.

## THE STANDARD

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 - 87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356. Summary judgment is required when a party fails to make a showing sufficient to establish an

essential element of a claim, even if there are genuine factual issues proving other elements of the claim. Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no facts or inferences which can be drawn from the circumstances will support Plaintiff's claims, summary judgment is appropriate.

## DISCUSSION

The FTCA provides at § 2674 as follows:

> The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

The FTCA, however, does not create a new cause of action. Medina v. United States, 259 F.3d 220, 223 (4th Cir. 2001). The statute merely "permits the United States to be held liable in tort in the same respect as a private person would be liable under the law of the place where the act occurred." Id.

In the present case, Plaintiff alleges that Defendant's negligent acts occurred in the State of West Virginia. Accordingly, West Virginia state law applies. Under West Virginia law, a plaintiff must comply with the Medical Professional Liability Act [MPLA]. To establish medical malpractice, the MPLA provides that the Plaintiff must prove the following: "(1) The health care provider failed to exercise that degree of care, skill and learning required or expected of a reasonable, prudent health care provider in the profession or class to which the health care provider belongs acting in the same or similar circumstances; and (2) Such failure was a proximate cause of the injury or death . . . ." W. Va. Code § 55-7B-3(a). Under West Virginia law, "[i]t is the general rule that in medical malpractice

cases, negligence or want of professional skill can be proved only by expert witnesses." Syllabus Point 2, Roberts v. Gale, 149 W.Va. 166, 139 S.Ed.2d 272 (1964). Expert testimony, however, is not required "where the lack of care or want of skill is so gross as to be apparent, or the alleged breach relates to noncomplex matters of diagnosis and treatment within the understanding of lay jurors by resort to common knowledge and experience." Farley v. Shook, 218 W.Va. 680, 629 S.E.2d 739 (2006).

In her Complaint, Plaintiff alleges that physicians at Access Health misdiagnosed her with HIV and failed to order additional testing to establish that she was not HIV positive. Plaintiff claims that physicians at Access Health ordered blood work that included a routine screening for HIV and the lab reported that the HIV test was "repeatedly reactive." A confirmatory test known as a "Western Blot" was done, which was reported as positive. Access Health physicians then informed Plaintiff that she was HIV positive and referred her to a infectious disease specialist. Subsequently, Beckley-Raleigh County Board of Health conducted an HIV test, which revealed that the HIV was "non-reactive" or negative. Plaintiff contends that the results of the negative HIV test were forwarded to Access Health, but Access Health failed to take any action to resolve the discrepancy in the HIV diagnoses. In its Motion for Summary Judgment, the United States contends that Plaintiff's Complaint should be dismissed because Plaintiff has failed to disclose any expert witnesses who will testify at trial to support her claims under the MPLA. (Document No. 29, pp. 2 - 4.) Plaintiff has failed to file a Response to the Motion.

The Court finds Plaintiff's allegations of medical negligence are complex and expert testimony is necessary. Specifically, the undersigned finds that the following is not within the

7

understanding of lay jurors by resort to common knowledge and experience: (i) Medical and scientific information concerning HIV; (ii) The validity of laboratory testing regarding HIV; (iii) The determination of when additional HIV testing is necessary; and (iv) The roles of physicians of different specialities.[4] Thus, expert testimony is necessary to support any finding that the medical treatment provided by physicians at Access Health fell below the applicable standard of care. Accordingly, the United States' Motion for Summary Judgment should be granted because Plaintiff has failed to disclose any expert witness who will testify at trial in support of her MPLA claim.[5]

## PROPOSAL AND RECOMMENDATION

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **GRANT** the United States' Motion for Summary Judgment (Document No. 28.), **DISMISS** Plaintiff's Complaint (Document No. 1.) and remove this matter from the Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Irene C. Berger. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and

---

[4] According to the allegations contained in her Complaint, Access Health referred Plaintiff to an infectious disease specialist following receipt of the lab report showing a positive HIV test.

[5] On August 11, 2011, the District Court entered a Scheduling Order requiring Plaintiff disclose expert witnesses under Fed. R. Civ. P. 26(a)(2)(A) and (B) by March 15, 2012. Plaintiff, however, failed to disclose any expert witnesses. Rule 37(c)(1) of the Federal Rules of Civil Procedure provides that "[i]f a party fails to . . . identify a witness as required by Rule 26(a)..., the party is not allowed to use that . . . witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."

72(b), Federal Rules of Civil Procedure, the Plaintiff shall have seventeen (17) days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Berger and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Plaintiff, who is acting *pro se*, and transmit a copy to counsel of record.

Date: July 10, 2012.

R. Clarke VanDervort
United States Magistrate Judge